1  WRIGHT, FINLAY & ZAK, LLP
   T. Robert Finlay, Esq., SBN 167280
2  Patricia L. Penny, Esq., SBN 124969
3  4665 MacArthur Court, Suite 280
   Newport Beach, CA 92660
4  Tel: (949) 477-5050; Fax: (949) 608-9142
5
6  Attorneys for Defendant,
   RESIDENTIAL CREDIT SOLUTIONS, INC., a Delaware corporation
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 SHERRY MANNELLO, an individual,  )  Case No. CV15-7674 CAS (AJWx)
                                    )
12              Plaintiff,          )  **REQUEST FOR JUDICIAL**
13                                  )  **NOTICE IN SUPPORT OF**
       vs.                          )  **MOTION TO DISMISS**
14                                  )  **PLAINTIFF'S FIRST AMENDED**
15 RESIDENTIAL CREDIT SOLUTIONS,    )  **COMPLAINT**
   INC., a Delaware corporation; and )
16 DOES 1-10, inclusive,            )
                                    )  Date:   January 11, 2016
17                                  )  Time:   10:00 a.m.
18              Defendants.         )  Ctrm:   5- 2nd Floor
                                    )
19 _____ )
                                    )  *[Filed Concurrently with Motion to*
20                                  )  *Dismiss and Proposed Order]*

21       Defendant, RESIDENTIAL CREDIT SOLUTIONS, INC., a Delaware

22 corporation ("Defendant"), respectfully requests that the Court take judicial notice

23 of the following documents in support of their of their Motion to Dismiss

24 Plaintiff's First Amended Complaint filed concurrently herewith:

25       1.     Complaint filed in the Superior Court of the State of California,

26 County of Ventura, entitled <u>Sherry Mannello v. The Bank of New York Mellon et</u>

27 <u>al.</u>, Case No. 56-2015-00472805-CU-OR-VTA.  A true and correct copy is

28 attached hereto as **Exhibit "A."**

2.      Grant Deed recorded on December 21, 2005, as Document No. 20051221-0311605 in the Official Records of the Ventura County Recorder's Office.  A true and correct copy is attached hereto as **Exhibit "B."**

3.      Power of Attorney - Special recorded on December 21, 2005, as Document No. 20051221-0311606 in the Official Records of the Ventura County Recorder's Office.  A true and correct copy is attached hereto as **Exhibit "C."**

4.      Deed of Trust recorded on December 21, 2005, as Document No. 20051221-0311607 in the Official Records of the Ventura County Recorder's Office.  A true and correct copy is attached hereto as **Exhibit "D."**

5.      Assignment of Deed of Trust recorded on May 25, 2012, as Document No. 20120525-00094724-0 1/2 in the Official Records of the Ventura County Recorder's Office.  A true and correct copy is attached hereto as **Exhibit "E."**

6.      Substitution of Trustee recorded on July 10, 2014, as Document No. 20140710-0008551400 1/2 in the Official Records of the Ventura County Recorder's Office.  A true and correct copy is attached hereto as **Exhibit "F."**

7.      Notice of Trustee's Sale recorded on September 4, 2015, as Document No. 20150904-00134212-0 1/2 in the Official Records of the Ventura County Recorder's Office.  A true and correct copy is attached hereto as **Exhibit "G."**

Respectfully submitted,

**WRIGHT, FINLAY & ZAK, LLP**

Dated:  November 12, 2015     By:     */s/ Patricia L. Penny*
T. Robert Finlay, Esq.
Patricia L. Penny, Esq.
Attorneys for Defendant, RESIDENTIAL CREDIT SOLUTIONS, INC., a Delaware corporation

RJN 002

-2-

REQUEST FOR JUDICIAL NOTICE ISO MTD FIRST AMENDED COMPLAINT

# EXHIBIT  A

RJN 003

COPY

1 | Aidan W. Butler (SBN 208399)
Attorney at Law
2 | 3550 Wilshire Boulevard, Suite 1924
Los Angeles, California 90010
3 | Telephone: (213) 388-5168
Telecopier: (213) 388-5178
4 | tocontactaidan@gmail.com

5 | Attorneys for Plaintiff SHERRY MANNELLO

VENTURA
SUPERIOR COURT
FILED

SEP 2 9 2015

MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____,Deputy

SUSANNE LEON

6

7

8

**SUPERIOR COURT OF CALIFORNIA**

9

**COUNTY OF VENTURA - HALL OF JUSTICE**

10

| | |
|---|---|
| 11 SHERRY MANNELLO, an individual, ) | CASE NO.: 56-2015-00472805-CU-OR-VTA |
| 12 ) | |
| Plaintiff, ) | **COMPLAINT FOR:** |
| 13 ) | |
| vs. ) | |
| 14 ) | |
| THE BANK OF NEW YORK MELLON ) | **1) VIOLATIONS OF CAL. CIVIL CODE** |
| 15 FKA THE BANK OF NEW YORK AS ) | **§2923.5;** |
| TRUSTEE FOR THE ) | |
| 16 CERTIFICATEHOLDERS OF CWALT, ) | **2) VIOLATIONS OF CAL. CIVIL CODE** |
| INC., ALTERNATIVE LOAN TRUST ) | **§2924.11;** |
| 17 2006-HY3, MORTGAGE PASS- ) | |
| THROUGH CERTIFICATES, SERIES ) | **3) BREACH OF IMPLIED COVENANT** |
| 18 2006-HY3, a national association; ) | **OF GOOD FAITH AND FAIR** |
| RESIDENTIAL CREDIT SOLUTIONS, ) | **DEALING;** |
| 19 INC., a Delaware corporation; QUALITY ) | |
| LOAN SERVICE CORPORATION, a ) | **4) INJUNCTIVE RELIEF; AND** |
| 20 California corporation; and DOES 1 ) | |
| through 10, inclusive, ) | **5) UNFAIR BUSINESS PRACTICES.** |
| 21 ) | |
| Defendants. ) | |
| 22 _____) | |

23 | Plaintiff SHERRY MANNELLO (hereinafter "Plaintiff") alleges as follows:

24 | 1) Plaintiff is an individual, residing in the County of Ventura, State of California, and is the

25 | sole owner of certain real property located at the address commonly known as 68 Encino Avenue.

26 | Camarillo, California 93100 ("the Property").

27 | 2) Defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK

28 | AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN

1    TRUST 2006-HY3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY3, a

2    national association (hereinafter "NYM"), is a national banking association, and purports to be the

3    holder of Plaintiff's mortgage note.

4         3) Defendant QUALITY LOAN SERVICE CORPORATION (hereinafter "QLSC") is now

5    acting as the trustee for the purported beneficiary, and is the company that provided the notice of

6    default and notice of the trustee's sale, as described below.

7         4) Defendant RESIDENTIAL CREDIT SOLUTIONS, INC. (Hereinafter "RCS") is and at all

8    times relevant herein was a Delaware corporation, with its principal place of business located at Fort

9    Worth, Texas

10        5) Plaintiff is presently unaware of the true names of the Defendants sued herein as DOES 1

11   through 10, inclusive.   Plaintiff will seek leave of the Court to amend the names of the DOE

12   defendants once he ascertains their true names and identities.

13        6) Upon information and belief, Plaintiff alleges  that each Defendant, both named and

14   designated as a DOE, was an agent, partner, or successor of each other Defendant, and, in doing the

15   things hereinafter alleged, was acting within the scope and purpose of such agency or partnership

16   with full knowledge of the facts and with the ratification and approval of each other Defendant.

17

18   <u>BACKGROUND FACTS</u>

19        7) In or around 2005, Plaintiff obtained a loan from Countrywide for the purchase of her

20   residence.  The loan included a fixed rate "teaser" period followed by a much longer adjustable rate

21   period.

22        8) Subsequently, the loan was sold on the secondary market at least once.

23        9) Ultimately, the loan ended up being purportedly pooled into a securitized trust, for which

24   the master servicer was NYM.

25        10) After the "teaser" period ended, the rate on the loan jumped dramatically.

26        11) Plaintiff repeatedly sought to contact her servicer to attempt to renegotiate the terms of

27   the loan.  Eventually, personnel at RCS informed Plaintiff that such discussions were not likely to be

28   fruitful as long as Plaintiff was current.   RCS' employee indicated that only when the loan was

1  transferred to the "loss mitigation department" due to delinquency would the modification of terms

2  be considered by the purported holder.

3      12) Accordingly, Plaintiff stopped making payments on the loan.

4      13) However, rather than working with her to modify the terms, the defendants prepared and

5  caused to be served and recorded a Notice of Default.   Defendants did this without contacting

6  Plaintiff to explore options for avoiding foreclosure.

7      14) In or around August, 2015, Plaintiff submitted a completed loan modification packet,

8  along with supporting documenets, to RCS.  RCS acknowledged its receipt, and did not reject the

9  loan modification application.   Upon information and belief, neither RCS nor NYM has even

10 considered the application, any of its contents. or its supporting documents.

11     15) Nevertheless, RCS caused QLSC to record a Notice of Trustee's sale.

12

13              **FIRST CAUSE OF ACTION**

14          (For Violations of California Civil Code section 2923.5,

15          Against All Named Defendants and DOES 1 through 25, inclusive)

16     16) Plaintiff reincorporates herein all of the allegations of the preceding paragraphs 1 through

17 15 as though fully set forth hereat.

18     17) California Civil Code section 2923.5 provides, among other things, at subparagraph

19 (a)(2), that − in pertinent part − "A mortgage servicer shall contact the borrower in person or by

20 telephone in order to assess the borrower's financial situation and explore options for the borrower to

21 avoid foreclosure."

22     18) In this case, none of the Defendants complied with section 2923.5 prior to filing a notice

23 of trustee's sale.

24     19) Defendants' non-compliance with section 2923.5 was willful, deliberate and in conscious

25 disregard of the rights of Plaintiff.

26

27

28

COMPLAINT      RJN 006

## SECOND CAUSE OF ACTION

(For Violations of California Civil Code §2924.11 Against All Named Defendants and DOES 1 through 25, inclusive)

20) Plaintiff reincorporates herein all of the allegations of the preceding paragraphs 1 through 19 as though fully set forth hereat.

21) California Civil Code section 2924.11 prohibits "dual tracking."

22) Nevertheless, Plaintiff had submitted to Defendants – specifically, RCS – a complete loan modification application prior to the recordation of the notice of trustee's sale. RCS had acknowledged receipt of the application and the supporting documents from Plaintiff.

23) In this case, none of the Defendants complied with section 2924.11 prior to filing a notice of trustee's sale.

24) Defendants' non-compliance with section 2924.11 was willful, deliberate and in conscious disregard of the rights of Plaintiff.

## THIRD CAUSE OF ACTION

(For Breach of Implied Covenant of Good Faith and Fair Dealing Against RCS, NYM, and DOES 1 through 25, inclusive)

25 Plaintiff reincorporates herein all of the allegations of the preceding paragraphs 1 through 24 as though fully set forth hereat.

26) A valid, binding contract was formed by Plaintiff and the predecessor/assignor or NYM, which included an implied covenant that the parties would do nothing to undermine the other party's objectives in forming the contract.

27) Defendants, and each of them, have breached the implied covenant of good faith and fair dealing by disclaiming the contract in its entirety.

28) As a direct and proximate result of the conduct of the defendants, and each of them, Plaintiff has suffered harm, subject to proof at the time of trial.

## FOURTH CAUSE OF ACTION

(For Injunctive Relief Against All Named Defendants DOES 1 through 25, inclusive)

29) Plaintiff reincorporates herein all of the allegations of the preceding paragraphs 1 through 28 as though fully set forth hereat.

30) Defendants have served a Notice of Default and a Notice of Trustee's Sale.  Defendants have failed to comply with the requirements of Civil Code section 2923.5(c), despite the QLSC's attachment of various generic documents reciting compliance in boilerplate terms.  The Trustee's Sale is now scheduled for October 2, 2015.

31)  Unless enjoined from further transferring the Subject Property to third party buyers or transferees, Plaintiff may be forever unable to recover possession of the Subject Property.

32) Given the inherent uniqueness of real estate, Plaintiff would suffer irreparable harm as a direct and proximate result if further transfer of the Subject Property is not enjoined by this Court; it would be impossible for Plaintiff to adequately calculate the harm suffered as a result of the loss of ownership of the land.

33) Irreparable harm to Plaintiff will be avoided only if the Court enjoins further transfer of the Subject Property.

## FIFTH CAUSE OF ACTION

(For Unfair Business Practices Against All Named Defendants DOES 1 through 25, inclusive)

34) Plaintiff reincorporates herein all of the allegations of the preceding paragraphs 1 through 33 as though fully set forth hereat.

35) Defendants, and each of them, have engaged in deceptive, unfair business practices by, among other things, repeatedly promising Plaintiff a modification of her home loan without any genuine intent to honor its own promises; and by failing to comply with their obligations under California and Federal law.

36) As a direct and proximate result of the misconduct of Defendants, and each other, Plaintiff has suffered actual damages in an amount subject to proper at the time of trial.

COMPLAINT    RJN 008

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1. That Plaintiff be adjudicated to be the owner in fee simple of the Subject Property and that Defendants herein have no interest in the property adverse to plaintiffs;

2. For a judicial determination of and declaration as to the respective rights and obligations of the parties hereto;

3. For an order compelling Defendant's compliance with the Homeowner Bill of Rights;

4. For punitive and exemplary damages;

5. For costs of suit incurred herein;

6. Injunctive relief barring Defendants from foreclosing on the deed of trust and/or note;

7. For actual damages, statutory damages, and attorney's fees under the Truth in Lending Act; and

8. For such other and further relief as the Court may deem proper.

PLEASE TAKE NOTICE that plaintiff SHERRY MANNELLO demands a trial by jury.

DATED: September 29, 2015                    Respectfully submitted,

By: _____
    Aidan W. Butler
    Attorneys for Plaintiff
    SHERRY MANNELLO

6                                    COMPLAINT          RJN 009

# EXHIBIT  B

RJN 0010

Branch :F7I,User :TZ02                    Comment:                           Station Id :A978

RECORDED AT REQUEST OF
TICOR

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
Charles S. Smith
Sherry Mannelo
68 Encino Avenue
Camarillo, CA  93010

```
2005 1221-0311605
Pages: 3
12/21/2005 08:00:00 AM
T20050105871 FO
Ventura County Recorder
Philip J. Schmit
```

A.P.N.: 152-0-160-235        Order No.: 5001856        Space Above This Line for Recorder's Use Only
                                                         Escrow No.: 3-34499KP

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $2,200.00
[ X ]   computed on full value of property conveyed, or
[   ]   computed on full value less value of liens or encumbrances remaining at time of sale,
[   ]   unincorporated area;  [ X ]  City of Camarillo , and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
John R. Brady and Katherine A. Brady, Trustees of The Brady Family Revocable Trust Dated September 23, 2005

hereby GRANT(S) to  Sherry Mannello, an  Unmarried Woman

the following described property in the City of Camarillo, County of Ventura State of California;

See Exhibit "A" attached hereto and made a part hereof.

Brady Family Revocable Trust

John R. Brady, Trustee , Trustee          Katherine A. Brady , Trustee
                                          Katherine A. Brady, Trustee

Document Date:  December 2, 2005

STATE OF CALIFORNIA                      )SS
COUNTY OF  Ventura                       )
On  December 6, 2005  before me, Shonti A. Conner, Notary Public
personally appeared  John R. Brady, Katherine A. Brady
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature

SHONTI A. CONNER
Commission # 1465202
Notary Public - California
Ventura County
My Comm. Expires Jan 26, 2008

Mail Tax Statements to:   SAME AS ABOVE  or  Address Noted Below

VENTURA,CA                    Page 1 of 3          Printed on 10/7/2015 11:35:45 AM
Document: DD 2005.311605

RJN 0011

YOUR REFERENCE: 3-34499KP                                    ORDER NO.: 5001856-03

## EXHIBIT "A"

PARCEL I:

PARCEL 1, OF PARCEL MAP NO. 4278, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS SHOWN ON THAT CERTAIN PARCEL MAP FILED IN BOOK 47, PAGES 93 AND 94 OF PARCEL MAP IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE INTEREST IN SAID LAND RESERVED IN DEED FROM JANSS INVESTMENT CORPORATION RECORDED JUNE 4, 1954 AS DOCUMENT NO. 16037 IN BOOK 1207, PAGE 95 OF OFFICIAL RECORDS, AS FOLLOWS:

"EXCEPTING AND RESERVING TO THE GRANTOR, ITS SUCCESSORS AND/OR ASSIGNS AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL THE OIL, GAS AND HYDROCARBON SUBSTANCES IN OR UNDERLYING THE REAL PROPERTY DESCRIBED; PROVIDED, HOWEVER, THE GRANTOR SHALL NOT HAVE THE SURFACE RIGHT TO EXTRACT SUCH MINERALS."

ALSO EXCEPT THEREFROM THE REMAINING UNDIVIDED ONE-HALF INTEREST IN AND TO ALL THE OIL, GAS AND HYDROCARBON SUBSTANCES IN, ON OR UNDERLYING THE REAL PROPERTY ABOVE DESCRIBED; PROVIDED, HOWEVER, WITHOUT THE SURFACE RIGHT OF ENTRY TO EXTRACT SUCH MINERALS, AS RESERVED BY PHILIP LAW, ET UX., IN DEED RECORDED JANUARY 12, 1979 IN BOOK 5304, PAGE 247, OFFICIAL RECORDS.

PARCEL II:

AN EASEMENT FOR THE PURPOSE OF INGRESS AND EGRESS TO AND FROM AND FOR PUBLIC UTILITY PURPOSES FOR THE USE AND BENEFIT OF THE OWNERS AND OCCUPANTS, THEIR LICENSEES AND INVITEES TOGETHER WITH THE RIGHT TO IMPROVE, MAINTAIN AND REPAIR THE SAME, OVER AND ACROSS THE FOLLOWING DESCRIBED PROPERTY:

A PORTION OF LOT 19, RANCHO LAS POSAS ESTATES, UNIT NO. 2 IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE 59 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS FOLLOWS:

BEGINNING AT A 3/4 INCH IRON PIPE BEARING A METAL TAG STAMPED "RCE13241" SET AT THE NORTHEASTERLY CORNER OF SAID LOT 19, SAID 3/4 INCH IRON PIPE ALSO BEING AT THE NORTHEASTERLY CORNER OF PARCEL 3, AS SHOWN ON MAP FILED IN BOOK 17, PAGE 100 OF PARCEL MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND THE SOUTHERLY LINE OF ENCINO AVENUE, 50 FEET WIDE; THENCE ALONG THE EASTERLY AND SOUTHERLY LINE OF ENCINO AVENUE, 50 FEET WIDE; THENCE ALONG THE EASTERLY AND SOUTHERLY LINES OF SAID LOT 19 AND PARCEL 3, THE FOLLOWING TWO COURSES:

1ST:  SOUTH 13° 57' 10" EAST 194.15 FEET TO A 2-INCH IRON PIPE BEARING A METAL TAG STAMPED "RE4825" SET AT THE SOUTHEASTERLY CORNER OF SAID LOT 19 AND SAID PARCEL 3; THENCE,

2ND:  SOUTH 83° 33' 45" WEST 27.06 FEET TO A 1/2 INCH IRON PIPE BEARING A METAL TAG STAMPED "LS-3320"; THENCE PARALLEL TO AND 26.83 FEET WESTERLY, MEASURED AT RIGHT ANGLES, FROM SAID EASTERLY LINE OF SAID LOT 19 AND SAID PARCEL 3.

3RD:  NORTH 13° 57' 10" WEST 201.99 FEET TO A 1/2 INCH IRON PIPE BEARING A METAL TAG STAMPED "LS-3320" SET IN THE NORTHERLY LINE OF SAID LOT 19, SAID 1/2 INCH IRON PIPE ALSO BEING THE SOUTHERLY LINE OF SAID ENCINO AVENUE; THENCE ALONG SAID NORTHERLY LINE OF LOT 19 AND SOUTHERLY LINE OF ENCINO AVENUE, THE FOLLOWING TWO COURSES,

4TH:  SOUTH 80° 57' 50" EAST 26.80 FEET;  THENCE,

5TH:  SOUTHEASTERLY 2.34 FEET ALONG A NON-TANGENT CURVE, CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 935 FEET AND A CENTRAL ANGLE OF 0° 08' 36" TO THE POINT OF BEGINNING.

PARCEL III:

AN EASEMENT FOR INGRESS, EGRESS AND PUBLIC UTILITIES OVER THAT PORTION OF PARCEL 1, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS SHOWN AS "PRIVATE STREETS" ON THAT CERTAIN PARCEL

Page 3

RJN 0012

Branch :F7I,User :TZ02                          Comment:                                    Station Id :A978

YOUR REFERENCE: 3-34499KP                                        ORDER NO.: 5001856-03

## EXHIBIT A *(continued)*

MAP FILED IN BOOK 47, PAGES 93 AND 94 OF PARCEL MAP IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NO. 152-0-160-235

Page 4

VENTURA,CA                          **Page 3 of 3**                  Printed on 10/7/2015 11:35:46 AM
Document: DD 2005.311605

RJN 0013

# EXHIBIT  C

RJN 0014

RECORDED AT REQUEST OF
TICOR

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

Charles S. Smith
68 Encino Ave
Camarillo CA 93010

```
20051221-0311606
Pages: 3    Fees: $13.00
12/21/2005 08:00:00 AM
T20050106871 FO
Ventura County Recorder
Philip J. Schmit
```

Space Above This Line for Recorder's Use Only

A.P.N.: 152-0-160-235          Order No.: 5001856          Escrow No.: 3-34499KP

## POWER OF ATTORNEY - SPECIAL

**KNOW ALL MEN BY THESE PRESENTS**

that **Sherry Mannello** has/have made, constituted and appointed, and by these presents do/does hereby make, constitue and appoint **Charles S. Smith** his/her/their true and lawful Attorney(s) for his/her/their name and in his/her/their name(s), place(s) and stead to ask, demand, sue for, recover, collect and receive all such sums of money, debts, dues, accounts, legacies, bequests, interests, dividends, annuities, and demands whatsoever as are now or shall hereafter become due, owing, payable, or belonging to the undersigned; and have, use, and take all lawful ways and means in the name of the undersigned, or otherwise, for the recovery thereof, by legal process, and to compromise and agree for the same, and grant acquittances or other sufficient discharges for the same, for the undersigned, and in the name of the undersigned to make, seal, and deliver the same; to compromise any and all debts owing by the undersigned, and to convey, transfer, and/or assign any property of any kind or character belonging to the undersigned in satisfaction of any debt owing by us or either of us; to bargain, contract, agree for, purchase, receive, and take lands, tenements, hereditaments, and accept the seize and possession of all lands, and all deeds, and other assurances in the law therefore; and to lease, let, demise, bargain, sell, remise, release, convey, mortgage, convey in trust, and hypothecated lands, tenements, and hereditaments, upon such terms and conditions, and under such covenants as said attorney shall think fit; to exchange real or personal property for other real or personal property, and to execute and deliver the necessary instruments of transfer or conveyance to consummate such exchange; to execute and deliver subordination agreements subordinating any lien, encumbrance or other right in real property or personal property to any other lien, encumbrance, or other right therein; also to bargain and agree for, buy, sell mortgage, hypothecate, convey in trust or otherwise, and in any and every way and manner deal in and with goods, wares and merchandise, choses in action, and other property in possession or in action, including authority to utilize my eligibility for VA Guaranty; also transfer all and every kind of business of what nature and kind whatsoever; and, also, for the undersigned and in the name(s) and as the act and deed of the undersigned, to signed, seal, execute,deliver, and acknowledge such deeds, covenants, leases, indentures, agreements, mortgages, deeds of trust, hypothecations, assignments, bottomries, charger parties, bills of lading, bills, bonds, notes, receipts, evidences of debts, releases, and  satisfactions of mortgage, judgment and other debts, and such other instruments in writing, of whatever kind of nature, as may be reasonable, advisable, necessary, or proper in the premises. EACH AND ALL OF THE POWERS HEREIN GRANTED SHALL BE EXERCISED BY SAID ATTORNEY AS TO THE FOLLOWING DESCRIBED PROPERTY ONLY:

**See Exhibit "A" attached hereto and made a part hereof.**

Commonly known as: 68 Encino Avenue, Camarillo, CA  93010

Giving and granting unto said Attorney(s) full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as the undersigned might or  could do if personally present, the undersigned hereby expressly ratifying and confirming all that said Attorney shall lawfully do or cause to be done by virtue of these presents.

_Sherry Mannello_ _____
Sherry Mannello
Mannello
Document Date:   December 15, 2005

STATE OF CALIFORNIA                    )SS
COUNTY OF _Ventura_                    )
On _12-15-2005_  before me _Shonti A. Conner, Notary Public_
personally appeared _Sherry Mannello_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the  within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____

```
SHONTI A. CONNER
Commission # 1465202
Notary Public - California
Ventura County
My Comm. Expires Jan 26, 2008
```

RJN 0015

Branch :F7I,User :TZ02          Comment:          Station Id :A978

YOUR REFERENCE: 3-34499KP          ORDER NO.: 5001856-03

# EXHIBIT "A"

PARCEL I:

PARCEL 1, OF PARCEL MAP NO. 4278, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS SHOWN ON THAT CERTAIN PARCEL MAP FILED IN BOOK 47, PAGES 93 AND 94 OF PARCEL MAP IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE INTEREST IN SAID LAND RESERVED IN DEED FROM JANSS INVESTMENT CORPORATION RECORDED JUNE 4, 1954 AS DOCUMENT NO. 16037 IN BOOK 1207, PAGE 95 OF OFFICIAL RECORDS, AS FOLLOWS:

"EXCEPTING AND RESERVING TO THE GRANTOR, ITS SUCCESSORS AND/OR ASSIGNS AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL THE OIL, GAS AND HYDROCARBON SUBSTANCES IN OR UNDERLYING THE REAL PROPERTY DESCRIBED; PROVIDED, HOWEVER, THE GRANTOR SHALL NOT HAVE THE SURFACE RIGHT TO EXTRACT SUCH MINERALS."

ALSO EXCEPT THEREFROM THE REMAINING UNDIVIDED ONE-HALF INTEREST IN AND TO ALL THE OIL, GAS AND HYDROCARBON SUBSTANCES IN, ON OR UNDERLYING THE REAL PROPERTY ABOVE DESCRIBED; PROVIDED, HOWEVER, WITHOUT THE SURFACE RIGHT OF ENTRY TO EXTRACT SUCH MINERALS, AS RESERVED BY PHILIP LAW, ET UX., IN DEED RECORDED JANUARY 12, 1979 IN BOOK 5304, PAGE 247, OFFICIAL RECORDS.

PARCEL II:

AN EASEMENT FOR THE PURPOSE OF INGRESS AND EGRESS TO AND FROM AND FOR PUBLIC UTILITY PURPOSES FOR THE USE AND BENEFIT OF THE OWNERS AND OCCUPANTS, THEIR LICENSEES AND INVITEES TOGETHER WITH THE RIGHT TO IMPROVE, MAINTAIN AND REPAIR THE SAME, OVER AND ACROSS THE FOLLOWING DESCRIBED PROPERTY:

A PORTION OF LOT 19, RANCHO LAS POSAS ESTATES, UNIT NO. 2 IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE 59 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS FOLLOWS:

BEGINNING AT A 3/4 INCH IRON PIPE BEARING A METAL TAG STAMPED "RCE13241" SET AT THE NORTHEASTERLY CORNER OF SAID LOT 19, SAID 3/4 INCH IRON PIPE ALSO BEING AT THE NORTHEASTERLY CORNER OF PARCEL 3, AS SHOWN ON MAP FILED IN BOOK 17, PAGE 100 OF PARCEL MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND THE SOUTHERLY LINE OF ENCINO AVENUE, 50 FEET WIDE; THENCE ALONG THE EASTERLY AND SOUTHERLY LINE OF ENCINO AVENUE, 50 FEET WIDE; THENCE ALONG THE EASTERLY AND SOUTHERLY LINES OF SAID LOT 19 AND PARCEL 3, THE FOLLOWING TWO COURSES:

1ST:  SOUTH 13° 57' 10" EAST 194.15 FEET TO A 2-INCH IRON PIPE BEARING A METAL TAG STAMPED "RE4825" SET AT THE SOUTHEASTERLY CORNER OF SAID LOT 19 AND SAID PARCEL 3; THENCE,

2ND:  SOUTH 83° 33' 45" WEST 27.06 FEET TO A 1/2 INCH IRON PIPE BEARING A METAL TAG STAMPED "LS-3320"; THENCE PARALLEL TO AND 26.83 FEET WESTERLY, MEASURED AT RIGHT ANGLES, FROM SAID EASTERLY LINE OF SAID LOT 19 AND SAID PARCEL 3.

3RD:  NORTH 13° 57' 10" WEST 201.99 FEET TO A 1/2 INCH IRON PIPE BEARING A METAL TAG STAMPED "LS-3320" SET IN THE NORTHERLY LINE OF SAID LOT 19, SAID 1/2 INCH IRON PIPE ALSO BEING THE SOUTHERLY LINE OF SAID ENCINO AVENUE; THENCE ALONG SAID NORTHERLY LINE OF LOT 19 AND SOUTHERLY LINE OF ENCINO AVENUE, THE FOLLOWING TWO COURSES,

4TH:  SOUTH 80° 57' 50" EAST 26.80 FEET; THENCE,

5TH:  SOUTHEASTERLY 2.34 FEET ALONG A NON-TANGENT CURVE, CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 935 FEET AND A CENTRAL ANGLE OF 0° 08' 36" TO THE POINT OF BEGINNING.

PARCEL III:

AN EASEMENT FOR INGRESS, EGRESS AND PUBLIC UTILITIES OVER THAT PORTION OF PARCEL 1, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS SHOWN AS "PRIVATE STREETS" ON THAT CERTAIN PARCEL

Page 3

VENTURA,CA          Page 2 of 3          Printed on 10/7/2015 11:35:46 AM
Document: PA 2005.311606

RJN 0016

Branch :F7I,User :TZ02                    Comment:                         Station Id :A978

YOUR REFERENCE: 3-34499KP                           ORDER NO.: 5001856-03

## EXHIBIT A *(continued)*

MAP FILED IN BOOK 47, PAGES 93 AND 94 OF PARCEL MAP IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NO. 152-0-160-235

Page 4

RJN 0017

# EXHIBIT  D

RJN 0018

Branch :F7I,User :TZ02                    Comment:                         Station Id :A978

RECORDED AT REQUEST OF
TICOR

Recording Requested By:
F. HAFIZ

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
JONQUILYN K. RAMEY

5001856

152-0-160-235

20051221-0311607
Pages: 24   Fees: $78.00
12/21/2005 08:00:00 AM
T20050106871 FO
Ventura County Recorder
Philip J. Schmit

[Space Above This Line For Recording Data]

3-34499KP                          00012447465512005
[Escrow/Closing #]                 [Doc ID #]

## DEED OF TRUST

MIN 1001337-0001098825-4

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  DECEMBER 15, 2005  , together with all Riders to this document.
**(B) "Borrower" is**
SHERRY MANNELLO, AN UNMARRIED WOMAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16

Initials: SM

-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291        Form 3005  1/01
CONV/VA
by Charles S. Smith her attorney in fact

* 2 3 9 9 1 *                     * 1 2 4 4 7 4 6 5 5 0 0 0 0 0 1 0 0 6 A *

RJN 0019

Branch :F7I,User :TZ02                    Comment:                              Station Id :A978

DOC ID #: 00012447465512005

Borrower's address is
68 ENCINO AVENUE, CAMARILLO, CA 93010
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is
RECON TRUST COMPANY, N.A.
MSN TO-02, 225 WEST HILLCREST DRIVE, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated   DECEMBER 15, 2005   . The
Note states that Borrower owes Lender
ONE MILLION FOUR HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 1,400,000.00      ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   JANUARY 01, 2036      .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

@~ -6A(CA) (0207)         CHL (08/02)          Page 2 of 16                    Initials: _____      Form 3005 1/01

by Charles S. Smith her attorney in fact

VENTURA,CA                           Page 2 of 24                    Printed on 10/7/2015 11:35:47 AM
Document: TD 2005.311607

RJN 0020

Branch :F7I,User :TZ02                                  Comment:                                                    Station Id :A978

DOC ID #: 00012447465512005

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                        of                        VENTURA                        :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 152-0-162-235                                  which currently has the address of
68 ENCINO AVE, CAMARILLO
[Street/City]
California 93010-1719 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)        CHL (08/02)              Page 3 of 16                                          Initials: _____        Form 3005 1/01

*by Charles P. Smith her attorney in fact*

VENTURA,CA                                        Page 3 of 24                              Printed on 10/7/2015 11:35:47 AM
Document: TD 2005.311607

RJN 0021

DOC ID #: 00012447465512005

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)     CHL (08/02)                        Page 4 of 16                    Initials: _____
                                                                                      Form 3005 1/01

*by Charles S. Smith, her attorney in fact*

RJN 0022

DOC ID #: 0001244765512005

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

*by Charles S. Smith her attorney in fact*

Initials: _SM_

-6A(CA) (0207)            CHL (09/02)            Page 5 of 16            Form 3005  1/01

RJN 0023

Branch :F7I,User :TZ02                          Comment:                                   Station Id :A978

DOC ID #: 00012447465512005

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

*by Charles R Smith her attorney in fact*   Initials: *SM*

-6A(CA) (0207)        CHL (08/02)              Page 6 of 16                         Form 3005 1/01

RJN 0024

DOC ID #: 00012447465512005

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

*by Charles S. Smith. her attorny in fact*          Initials: *SM*

-6A(CA) (0207)          CHL (08/02)          Page 7 of 16          Form 3005 1/01

RJN 0025

Branch :F7I,User :TZ02                          Comment:                                      Station Id :A978

DOC ID #: 00012447465512005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

-6A(CA) (0207)        CHL (08/02)        Page 8 of 16        Initials: _____        Form 3005 1/01

*by Charles P. Smith her attorney in fact*

RJN 0026

DOC ID #: 00012447465512005

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

VMP6 -6A(CA) (0207)        CHL (09/02)                Page 9 of 16                        Form 3005 1/01

by Charles P. Smith her attorney of fact

RJN 0027

DOC ID #: 0001247465512005

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

-6A(CA) (0207)        CHL (09/02)              Page 10 of 16                    Form 3005 1/01

Initials: *S.S.*

*by Charles S. Smith her attorney in fact*

RJN 0028

Branch :F7I,User :TZ02                    Comment:                                    Station Id :A978

DOC ID #: 0001244746512005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

@D-6A(CA) (0207)        CHL (08/02)         Page 11 of 16                    Initials: _SM_        Form 3005 1/01

*by Charles S. Smith her attorney in fact*

Page 11 of 24                    Printed on 10/7/2015 11:35:49 AM

RJN 0029

DOC ID #: 00012447465512005

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

-6A(CA) (0207)        CHL (08/02)                    Page 12 of 18                    Initials: _____

by Charles L. Smith

Form 3005 1/01

RJN 0030

DOC ID #: 0001244746551200S

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

-6A(CA) (0207)        CHL (09/02)              Page 13 of 16                    Initials: _SM_         Form 3005 1/01

_by Charles L Smith her attorney in fact_

Branch :F7I,User :TZ02                    Comment:                                    Station Id :A978

DOC ID #: 0001247465512005

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)        CHL (08/02)              Page 14 of 16                              Initials: _SM_        Form 3005 1/01

_by Charles S. Smith by her attorney in fact_

RJN 0032

Branch :F7I,User :TZ02                    Comment:                              Station Id :A978

DOC ID #: 0001247465512005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____              *Sherry L. Mannello by Charles S. Smith*

_____                                                    (Seal)
                                     SHERRY MANNELLO *her attorney in fact* -Borrower
                                     BY CHARLES S. SMITH AS HER ATTORNEY IN FACT

_____              _____ (Seal)
                                                                      -Borrower

                                     _____ (Seal)
                                                                      -Borrower

                                     _____ (Seal)
                                                                      -Borrower

-6A(CA) (0207)        CHL (09/02)           Page 15 of 16                Form 3005  1/01

DOC ID #: 00012447465512005

State of California
County of *Ventura*                    } ss.

On  *12-16-2005*        before me, *Shonti A. Conner, Notary Public*
                                                    personally appeared

*Charles S. Smith*

                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



*by Charles S. Smith her attorney in fact.*

(1293)-6A(CA) (0207)        CHL (09/02)        Page 16 of 16        Initials: __SM__        Form 3005  1/01

Prepared by: JONQUILYN K. RAMEY

**COUNTRYWIDE HOME LOANS, INC.**

DATE:      12/15/2005
CASE #:
DOC ID #:     00012447465512005
BORROWER: SHERRY MANNELLO
PROPERTY ADDRESS: 68 ENCINO AVE
            CAMARILLO, CA 93010-1719

Branch #: 0000521
6005 HIDDEN VALLEY ROAD, #110
CARLSBAD, CA 92009
Phone: (760)268-4340
Br Fax No.: (760)268-0967

### LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)





RJN 0035

YOUR REFERENCE: 3-34499KP                                              ORDER NO.: 5001856-03

## EXHIBIT "A"

PARCEL I:

PARCEL 1, OF PARCEL MAP NO. 4278, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS SHOWN ON THAT CERTAIN PARCEL MAP FILED IN BOOK 47, PAGES 93 AND 94 OF PARCEL MAP IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE INTEREST IN SAID LAND RESERVED IN DEED FROM JANSS INVESTMENT CORPORATION RECORDED JUNE 4, 1954 AS DOCUMENT NO. 16037 IN BOOK 1207, PAGE 95 OF OFFICIAL RECORDS, AS FOLLOWS:

"EXCEPTING AND RESERVING TO THE GRANTOR, ITS SUCCESSORS AND/OR ASSIGNS AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL THE OIL, GAS AND HYDROCARBON SUBSTANCES IN OR UNDERLYING THE REAL PROPERTY DESCRIBED; PROVIDED, HOWEVER, THE GRANTOR SHALL NOT HAVE THE SURFACE RIGHT TO EXTRACT SUCH MINERALS."

ALSO EXCEPT THEREFROM THE REMAINING UNDIVIDED ONE-HALF INTEREST IN AND TO ALL THE OIL, GAS AND HYDROCARBON SUBSTANCES IN, ON OR UNDERLYING THE REAL PROPERTY ABOVE DESCRIBED; PROVIDED, HOWEVER, WITHOUT THE SURFACE RIGHT OF ENTRY TO EXTRACT SUCH MINERALS, AS RESERVED BY PHILIP LAW, ET UX., IN DEED RECORDED JANUARY 12, 1979 IN BOOK 5304, PAGE 247, OFFICIAL RECORDS.

PARCEL II:

AN EASEMENT FOR THE PURPOSE OF INGRESS AND EGRESS TO AND FROM AND FOR PUBLIC UTILITY PURPOSES FOR THE USE AND BENEFIT OF THE OWNERS AND OCCUPANTS, THEIR LICENSEES AND INVITEES TOGETHER WITH THE RIGHT TO IMPROVE, MAINTAIN AND REPAIR THE SAME, OVER AND ACROSS THE FOLLOWING DESCRIBED PROPERTY:

A PORTION OF LOT 19, RANCHO LAS POSAS ESTATES, UNIT NO. 2 IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE 59 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS FOLLOWS:

BEGINNING AT A 3/4 INCH IRON PIPE BEARING A METAL TAG STAMPED "RCE13241" SET AT THE NORTHEASTERLY CORNER OF SAID LOT 19, SAID 3/4 INCH IRON PIPE ALSO BEING AT THE NORTHEASTERLY CORNER OF PARCEL 3, AS SHOWN ON MAP FILED IN BOOK 17, PAGE 100 OF PARCEL MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND THE SOUTHERLY LINE OF ENCINO AVENUE, 50 FEET WIDE; THENCE ALONG THE EASTERLY AND SOUTHERLY LINE OF ENCINO AVENUE, 50 FEET WIDE; THENCE ALONG THE EASTERLY AND SOUTHERLY LINES OF SAID LOT 19 AND PARCEL 3, THE FOLLOWING TWO COURSES:

1ST:   SOUTH 13° 57' 10" EAST 194.15 FEET TO A 2-INCH IRON PIPE BEARING A METAL TAG STAMPED "RE4825" SET AT THE SOUTHEASTERLY CORNER OF SAID LOT 19 AND SAID PARCEL 3; THENCE,

2ND:   SOUTH 83° 33' 45" WEST 27.06 FEET TO A 1/2 INCH IRON PIPE BEARING A METAL TAG STAMPED "LS-3320"; THENCE PARALLEL TO AND 26.83 FEET WESTERLY, MEASURED AT RIGHT ANGLES, FROM SAID EASTERLY LINE OF SAID LOT 19 AND SAID PARCEL 3.

3RD:   NORTH 13° 57' 10" WEST 201.99 FEET TO A 1/2 INCH IRON PIPE BEARING A METAL TAG STAMPED "LS-3320" SET IN THE NORTHERLY LINE OF SAID LOT 19, SAID 1/2 INCH IRON PIPE ALSO BEING THE SOUTHERLY LINE OF SAID ENCINO AVENUE; THENCE ALONG SAID NORTHERLY LINE OF LOT 19 AND SOUTHERLY LINE OF ENCINO AVENUE, THE FOLLOWING TWO COURSES,

4TH:   SOUTH 80° 57' 50" EAST 26.80 FEET;  THENCE,

5TH:   SOUTHEASTERLY 2.34 FEET ALONG A NON-TANGENT CURVE, CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 935 FEET AND A CENTRAL ANGLE OF 0° 08' 36" TO THE POINT OF BEGINNING.

PARCEL III:

AN EASEMENT FOR INGRESS, EGRESS AND PUBLIC UTILITIES OVER THAT PORTION OF PARCEL 1, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS SHOWN AS "PRIVATE STREETS" ON THAT CERTAIN PARCEL

Page 3

RJN 0036

Branch :F7I,User :TZ02                    Comment:                                    Station Id :A978

YOUR REFERENCE: 3-34499KP                          ORDER NO.: 5001856-03

## EXHIBIT A  *(continued)*

MAP FILED IN BOOK 47, PAGES 93 AND 94 OF PARCEL MAP IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NO. 152-0-160-235

Page 4

RJN 0037

Branch :F7I,User :TZ02                    Comment:                    Station Id :A978

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JONQUILYN K. RAMEY

Recording Requested By:

——————————— [Space Above This Line For Recording Data]———————————
## FIXED/ADJUSTABLE RATE RIDER
(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

|                  |                      |
|------------------|----------------------|
| 3-34499KP        | 00012447465512005    |
| [Escrow/Closing #] | [Doc ID #]         |

CONV
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)(d)          Page 1 of 5                    Initials: _____

by Charles S. Smith her attorney in fact

VENTURA,CA                    Page 20 of 24            Printed on 10/7/2015 11:35:50 AM
Document: TD 2005.311607

RJN 0038

DOC ID #: 00012447465512005

THIS FIXED/ADJUSTABLE RATE RIDER is made this FIFTEENTH        day of
DECEMBER, 2005   , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

68 ENCINO AVE
CAMARILLO, CA 93010-1719
[Property Address]
THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of       6.375 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  **(A) Change Dates**
  The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first        day of JANUARY, 2013    , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."
  **(B) The Index**
  Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".
  If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
  **(C) Calculation of Changes**
  Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER        percentage points (    2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                         Page 2 of 5                         Initials: _____

*by Charles S. Smith her attorney in fact*

RJN 0039

Branch :F7I,User :TZ02                    Comment:                                    Station Id :A978

DOC ID #: 0001244746551200S

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.375 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 3 of 5                    Initials: _____

*by Charles S. Smith her attorney in fact*

RJN 0040

Branch :F7I,User :TZ02                    Comment:                          Station Id :A978

DOC ID #: 0001244746551200 5

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

CONV
•MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 4 of 5                    Initials: _____

*by Charles L. Smith her attorney in fact*

RJN 0041

Branch :F7I,User :TZ02                    Comment:                              Station Id :A978

DOC ID #: 00012447465512005

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
                                          -Borrower
SHERRY MANNELLO  BY CHARLES S. SMITH AS
HER ATTORNEY IN FACT
_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 5 of 5

RJN 0042

# EXHIBIT  E

RJN 0043

Branch :F7I,User :TZ02                    Comment:                              Station Id :A978

Recording Requested By:
Bank of America
Prepared By: Bank of America
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID# 20712447465517172
Property Address:
68 Encino Ave
Camarillo, CA 93010-1719
CAO-ADT 18488846        5/14/2012

```
20120525-00094724-0 1/2
·Ventura County Clerk and Recorder
MARK A. LUNN
05/25/2012 03:48:22 PM
617680 $21.80 MA
```

This space for Recorder's use

MIN #: 100133700010988254        MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK  AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST  2006-HY3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY3** whose address is **101 BARCLAY ST - 4W, NEW YORK ,NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:         **COUNTRYWIDE HOME LOANS, INC.**
Original Borrower(s):    **SHERRY MANNELLO, AN UNMARRIED WOMAN**
Original Trustee:        **RECON TRUST COMPANY, N A**
Date of Deed of Trust:   **12/15/2005**
Original Loan Amount:    **$1,400,000.00**

Recorded in Ventura County,CA  on: 12/21/2005, book N/A, page N/A and instrument number 20051221-0311607

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**MAY 16 2012**

                                    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
                                    INC.

                                    By: _____
                                        Randy Kevin Lindsey
                                             Assistant Secretary

RJN 0044

Branch :F7I,User :TZ02                    Comment:                              Station Id :A978

State of California
County of Ventura

On __MAY 1 6 2012__ before me, __L. Simmon_____, Notary Public, personally appeared
__Randy Kevin Lindsey__
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____ L. Simmon _____         (Seal)
My Commission Expires: _____ Apr. 24, 2013

```
L. SIMMON
Commission # 1842319
Notary Public - California
Los Angeles County
My Comm. Expires Apr 24, 2013
```

DocID#    2071244746551 7172

VENTURA,CA                        Page 2 of 2              Printed on 10/7/2015 11:35:52 AM
Document: AS 2012.94724

RJN 0045

EXHIBIT  F

RJN 0046

Branch :F7I,User :TZ02                                    Comment:                                        Station Id :A978

Recording Requested by: DPS

Recording requested by:
SERVICELINK

When recorded mail to:

Quality Loan Service Corporation
2141 5th Avenue
San Diego, CA 92101
619-645-7711

20140710-00085514-0 1/2
Ventura County Clerk and Recorder
MARK A. LUNN
07/10/2014 08:00:00 AM
037059 $28.00 RE

TS No.: CA-14-624378-HL                              Space above this line for recorders use
Order No.: 140109097-CA-API
APN. No.: 152-0-160-235
MERS MIN No.: 1001337-0001098825-4MERS Telephone No. 1-888-679-6377

# Substitution of Trustee

WHEREAS, SHERRY  MANNELLO , AN UNMARRIED WOMAN was the original Trustor, RECON TRUST COMPANY, N A was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. was the original Beneficiary under that certain Deed of Trust dated 12/15/2005 and recorded on 12/21/2005 as Instrument No. 20051221-0311607,    of Official Records of VENTURA County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE CORPORATION as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

RJN 0047

TS No.: CA-14-624378-HL
Page 2

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST  2006-HY3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY3**
By Residential Credit Solutions, Inc., as its attorney in fact

By:  Lori Jones            Assistant Vice President -Servicing

State of:  Texas          )

County of:  Tarrant        )

On this   June  12th ,2014   before me   Sarah N Oglesby, a notary public personally appeared    Lori Jones           , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the state of ___Texas___ that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____  (NOTARY SEAL)
Signature

SARAH N OGLESBY
Notary Public, State of Texas
My Commission Expires
March 21, 2015

RJN 0048

# EXHIBIT  G

RJN 0049

*Simplifile*
Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

20150904-00134212-0  1/2
Ventura County Clerk and Recorder
MARK A. LUNN
09/04/2015 11:38:21 AM
981060  $27.00  VA

Electronically Recorded in Official Records,
County of Ventura

---

TS No. CA-14-624378-HL
Order No.: 140109097-CA-VOI                  SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12/15/2005. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED
AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this
state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or
implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by
the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the
Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the
initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on
the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):      **SHERRY MANNELLO , AN UNMARRIED WOMAN**
Recorded:        **12/21/2005 as Instrument No. 20051221-0311607**      of Official Records in the office of the
                 Recorder of VENTURA County, California;

Date of Sale:    **10/2/2015 at 11:00AM**
Place of Sale:   **At the main entrance to the Government Center Hall of Justice, located at 800 South
                 Victoria Avenue, Ventura, CA 93009**
Amount of unpaid balance and other charges: **$1,633,831.80**
The purported property address is:      **68 ENCINO AVE, CAMARILLO, CA 93010**
Assessor's Parcel No.: **152-0-160-235**

---

RJN 0050

TS No.: CA-14-624378-HL

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 916.939.0772 for information regarding the trustee's sale or visit this Internet Web site http://www.qualityloan.com, using the file number assigned to this foreclosure by the Trustee: CA-14-624378-HL. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Date: 09/02/2015

Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101
619-645-7711 For NON SALE information only
Sale Line: 916.939.0772
Or Login to: http://www.qualityloan.com
Reinstatement Line: (866) 645-7711 Ext 5318

Quality Loan Service Corp. by: Daisy Rios, as Authorized Agent.

RJN 0051

# **PROOF OF SERVICE**

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is 4665 MacArthur Court, Suite 200, Newport Beach, California 92660.  I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

On November 12, 2015, I served the within **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**  on all interested parties in this action as follows:

[ ]     by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Aidan W. Butler
Attorney at Law
3550 Wilshire Blvd, Suite 1924
Los Angeles, CA 90010,
(213) 388-5168
Attorney for Sherry Mannello, Plaintiff

[ ]     (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]     (BY CERTIFIED MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices, via Certified Mail, Return Receipt Requested.

[ ]     (BY PERSONAL SERVICE) I caused personal delivery by ATTORNEY SERVICE of said document(s) to the offices of the addressee(s) as set forth on the attached service list.

[ ]     (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

RJN 0052

[ ]    (BY GOLDEN STATE OVERNIGHT- NEXT DAY DELIVERY) I placed true and correct copies thereof enclosed in a package designated by Golden State Overnight with the delivery fees provided for.

[X]    (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(b)(2)(E). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(b)(2)(E). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

[X]    (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on November 12, 2015, at Newport Beach, California.

_____
Gretchen Grant

RJN 0053

**PROOF OF SERVICE**